Are we welcome to come back to the room? Thank you. The next case is number 2312708, Catherine Rudd v. Branch Banking & Trust Company. Please stand by for a moment of silence. May it please the Court. Good morning, Your Honors. My name is Jeff Marr and I'm here on behalf of Plaintiff Appellants Catherine Rudd and Tiffany Atkinson in this action involving the dereliction of fiduciary duties by the successor trustee, BB&T, with respect to the shares in 1989 trusts. The record in this action reflects that despite knowledge that virtually all of the trust assets had been depleted, almost $10 million, and that the trust terms was not followed, and finally that the plaintiffs were never informed of their interest in these trusts, BB&T failed to hold anyone to account for such pervasive wrongdoing as statutorily required. BB&T defended the action in saying that most of the wrongdoing occurred before it became trustee in the matter. However, this contention runs afoul of its statutory obligation as a successor trustee to collect and preserve trust assets, to enforce claims of the trust, and to redress breaches of fiduciary duty by the predecessor trustees. In fact, Judge Ott, the district court judge, expressly held that BB&T may be held liable for failing to redress prior breaches by the predecessor trustees, Joy Adams and Wells Fargo. Tellingly, in the underlying state court action, the circuit court judge found that predecessor trustee Wells Fargo was complicit in a pattern of abuse and neglect that allowed its co-trustee, Joy Adams, to plunder the trust created by her father, and that Wells Fargo ignored its oversight response. We did not recover against Wells Fargo. You recovered against the successor trustees. We recovered against the predecessor trustees. Wells Fargo was the predecessor trustee. We recovered against Joy Adams. We entered into a pro-tentative settlement agreement wherein we largely stepped into the shoes as trustee. A custodian, Arlington Trust Company. Arlington Trust was the custodian for BB&T, right?  Okay. I mean, they inherited from the failed bank whose name I can't remember. I think it's Colonial Bank. Colonial Bank, so Arlington was the custodian, and then BB&T went in and bought the failed bank, so they inherited. How much money approximately, or does the record tell me, was left at the time the BB&T bought the failed bank and therefore succeeded to this situation? I believe, Your Honor, the shares trust collectively held at that time around $200,000, I believe, and with respect to the 1989 trust, there was minimal liquid assets in it. I thought it was around $100. Yeah, $180, something to that effect. $200,000 in the shares trust, what happened to that? I thought they closed the trust. You're right. It's not big enough for anybody managing, so that $200,000 went away to the beneficiaries. That's right. Most of the $200,000 was distributed to the current income beneficiary, Joy Adams, and then BB&T terminated the trust. I'm trying to see what BB&T did.  I assume that's not so much what they did. You're saying they should have pursued the prior people? That's right. That's right, Your Honor. As successor trustee, they had a fiduciary obligation under Alabama Code Section 19. Once they got there, they should have started suing the prior people. That's right. Once they came on board as trustee, they should have... Even though they completed the trust and they just closed the trust, $200,000 was left in one trust by the time they got there. $200,000 that went to the beneficiaries, but they had an obligation to pursue everybody else who had done all these wrongs beforehand. Your Honor, with respect to the shares trust, there was $200,000 in cash in that trust, but there was also almost $2 million in a loan receivable because Joy Adams borrowed a loan, about $2 million. That was not collectible at that time, was it? I don't know that it wasn't. She had assets, so she could have borrowed against some assets. They settled with Joy. We settled with Joy on a pro-tanto basis so we could become appointed as trustees, so we had the legal right to bring a claim against the other trustees. So, by order dated March of 2023, the District Court granted summary judgment in favor of BB&T on all claims. How did they sue all the predecessors? They take the $200,000 that's left and start hiring lawyers? Is that what they should have done? Well, BB&T, a successor trustee, had a fiduciary obligation. You pay out of the trust. You have a fiduciary obligation to pursue and protect the trust, but you get to take a trustee fee. If you don't represent the trust, I promise you, the lawyers get paid out of the trust. That's right, Your Honor. So, they should have taken the $200,000 and go sued people. That's right. That's right. They should have sued Arlington. And then your beneficiary is getting the $200,000. That's right, because about $10 million had been depleted at that time. Virtually all of the trust assets had been depleted. No one was following the terms of the trust. It was all clear by the time they got involved. I understand that, Your Honor, but they still had a fiduciary obligation as successor trustees to redress where it was known that there was prior breaches of trust. They had a fiduciary obligation to seek redress, which meant going to Joy and saying, those trust assets that were distributed to you needed to be returned. Going to Arlington and saying, those trust assets that you allowed to be distributed to Joy need to come back. They should have spent the beneficiary's remaining $200,000 to do that. That's right, Your Honor. That's right. So BB&T is repeatedly arguing that your clients failed to provide evidence of any damages they suffered on account of BB&T's failure to remedy the past wrongs, what we're talking about now. Right. There's been controversy saying you haven't given any evidence that if BB&T had intervened instead of your clients independently pursuing the claims against Joy and the other trustees, you would have received more money. I assume you disagree with that. Can you explain? I do disagree with that, Your Honor. With respect to the Shares Trust, Joy had taken out a $2 million loan against one of the closely held assets in the Shares I and II Trust. And so BB&T, what they did was they didn't get their arms around what the assets were of the Shares I and II Trust to realize that there was $2 million in a loan receivable. In fact, the tax returns reflected that this closely held asset was worth about $2 million. So what BB&T did was not realizing that there was a loan outstanding owed by Joy. They just simply terminated the Shares I and II Trusts because they said there was minimal money in it. And then when we ultimately sued, they've taken the position that, well, the Shares Trust terminated in April of 2011, and now the statute is run. So they basically improperly terminated the trust when there were substantial assets still in it to the tune of about $2 million. And then they said... It was a surprise that the beneficiaries agreed to the termination of the trust, right? No. The plaintiffs were unaware. Plaintiffs didn't know about the existence of the trust or they had an interest in it. They were never notified of the termination of the trust, not until they filed the lawsuit. Who got the $200,000? Joy did. The $200,000? Yes. Okay. Let me ask you about the final judgment on the merits issue. At summary judgment, you argued that the settlement agreement, quote, settled claims pertaining to Arlington's mismanagement of the Grandchildren's Trust, end quote, and, quote, neither pertain to nor resolve claims regarding the administration of the Shares or 1989 Trusts. But on appeal, you seemed to protest Judge Cornelius's determination that the terms of the settlement were limited to the Grandchildren's Trust. Right. What was the appealing interpretation that you urged? Your Honor, in the settlement agreement with Arlington, we compromised and settled all claims pertaining to all trusts, the Grandchildren's Trust, the Share I and II Trust, and the 1989 Trust. Is that in line with what you told Judge Cornelius? I believe that's what I said in my summary judgment motion before Judge Cornelius. Would you say that? That's what I believe in our summary judgment motion. We did say that the settlement with Arlington settled all claims with respect to the Grandchildren's Trust and the Share I and II Trust. And we, by doing that, we essentially released all claims against Arlington with respect to their administration of all those trusts. And, therefore, we forfeited our right or we relinquished our right to appeal that decision. But what about the language that the settlement didn't pertain to the Shares or 1989 Trusts? I think the compensation of the settlement was based upon what was happening and what we alleged was wrongly taken out of the Grandchildren's Trust. The reason we put that in there was because BB&T undoubtedly, ultimately, if the case went to trial, would want to set off of any of those monies that were settled. We believe that the District Court committed multiple errors by giving preclusive effect to the State Court's March 7, 2017 order. First, with respect to failing to give consideration to the settlement agreement with Arlington, whereby the U.S. Supreme Court and this Court has held that a settlement ordinarily occasions no race judicata effect. And, instead, there's a focus on the terms of the settlement agreement and the intent of the parties as the determining factor. The secondary area where the Court made error in applying collateral estoppel is with respect to its finding that the termination of the Shares Trust was necessary to the March, the interlock, refinal order in the State Court action. That State Court order at issue set forth multiple grounds for dismissal of the claims. It rejects the preclusive effect of a prior order based on multiple grounds stating where two or more possible grounds would support the judgment. And the Court does not clearly state the ground on which the judgment rests. The judgment cannot have preclusive effect as to either issue. This Court has recently, in 2024, reaffirmed that. I'm sorry. I will save that. Thank you, Your Honor. Is this yours? May it please the Court, I'm Larry Childs for BB&T Bank. I want to get right to two points that the panel identified in Mr. Morrow's argument. First, the elephant in the room. There is no evidence in the record that BB&T did anything or failed to do anything that would have caused anything different to occur. In this case, the individuals who brought this suit as trustees sued each of the alleged wrongdoer. They sued each person who received any money or participated in the distribution of challenged principal and interest payments. The primary one was Wells Fargo Bank. I say primary because about 88% of the original money began in Mrs. Adams' own trust. It was her money. She put it in a voluntary trust, and that was approximately $9 million. Wells Fargo, they sued Wells Fargo three times. They got a dismissal without prejudice and two summary judgments, both of which were affirmed by the Alabama Supreme Court. The trial court, the state court, held that the claims against Wells Fargo were barred as of 2004 because the fiduciary relationship was terminated in 2002. There is absolutely nothing BB&T could have done when it came on the scene inheriting the trust from Colonial Bank in 2009 or 2010 to sue Wells Fargo. The plaintiffs were represented by a competent counsel who is now a United States district judge, and they pursued their claims vigorously. So Wells Fargo was gone. They sued Joy Adams. They recovered a settlement from her which her counsel valued at $4 million for purposes of the attorney's fee, and Joy Adams, of course, got all the money that was in dispute, their mother, and they settled with her. There's never been any hint that they were not vigorously pursuing the claims against their mother or that BB&T could have done anything they couldn't do. They sued Arlington Trust Company, which was a custodian and managed all the transactions in the shares trust from 2001 until it was terminated in 2011. They recovered $555,000 from Arlington Trust Company. There's never been a hint that BB&T could have done anything that they didn't do. Now, the second point I'd like to address is that I think there was a fundamental misstatement in Mr. Morrow's presentation where he said there was a statutory duty of a successor trustee to pursue claims. The statute, in fact, I think this is, well, I don't have the statutory number, but the statute requires successor trustees to seek redress of known breaches of trust. There is not a hint or scintilla of evidence in this case that BB&T knew of any prior breaches of trust. The plaintiff's expert, their damages expert, and their liability expert, Ray Pierce, testified, this is in the record at document number 167-23, at pages 273 to 276 of his deposition, he testified explicitly that BB&T had no knowledge of any breaches of trust. Both of the trust agreements here absolved the successor trustee of any responsibility for actions of predecessor, and the 1989 trust, that's the Joy Adams trust that had her own money in it, specifically said there is not even a duty to investigate. So there is no statutory duty, and they mention Judge Ott's 2016 opinion. He specifically pointed out the statute only requires a successor to take action if there is actual knowledge of a breach of trust. The definition of actual knowledge is the most narrow that I have ever seen. It's actual knowledge to a person responsible for management of the trust. So there is no enterprise-wide imputation, and there is certainly no imputation from an agent such as Arlington Trust Company. The successor trustee has to have actual knowledge through its person who is responsible. So there is no question that here there are no damages, because BB&T could have done nothing that the plaintiffs themselves didn't do. Judge Hull mentioned there would have certainly been cost if the trustee had done it. Here they got their work done on a contingency and paid part of their $4.5 million recovery to their lawyers. They mentioned the Adams Timber Company matter. When BB&T became successor trustee, the family's accountant, that is the accountant for Joy Adams and her two daughters, gave to Arlington Trust, who passed along to BB&T, the final tax return for Adams Timber that showed it had no assets, and BB&T had no reason to know that there was any valuable money. You're talking about the $2 million loan? Yes, ma'am, the $1.9 million loan to Joy Adams. When the plaintiffs settled with their mother... Describe that again. It's a $1.9 million loan. Adams Timber Company was an LLC, and there was a loan of $1.9 million that was made to Adams Timber. Adams Timber was owned one-third each by the grandchildren's trust, which is not involved in this case, and two of the trusts that are, share one and share two. What we're referring to is that the trust, BB&T, had a loan receipt that Adams Trust owed $1.9, is that what it is? Actually, Joy Adams owed to Adams Timber Company. It wasn't owed to the trust, but the trust owned an interest. Oh, I see. Yes. That's right. The representation that was passed along to BB&T was that Adams Timber had no assets. But when the plaintiffs settled with their mother and received $4 million, according to their lawyer's calculation, they released Joy Adams from the loan and quick claimed Adams Timber back to her. So the plaintiffs themselves voluntarily, as part of their settlement, released the loan and any liability Joy Adams would have had to Adams Timber Company on the loan. They mentioned the final judgment and that it should be interpreted in accordance with the settlement agreement. The settlement agreement was never presented to the state court judge. The plaintiffs considered it confidential and we had to fight to get a copy of it. The only thing the judge got was a stipulation for dismissal which stipulated to the dismissal of the remaining claims. And if you look at the judge's order, it said, Pursuant to the party's stipulation, all remaining claims against Arlington Trust Company are hereby dismissed with prejudice. And it was a final order in the case. So the judge had entered an order on the merits granting summary judgment, partial summary judgment to Arlington Trust Company, and in no sense did the party's settlement take it back. Had they had a desire to eliminate the preclusive effect of his findings, they should have filed a motion to set aside as part of the settlement. And there are a lot of standards. It's called the Rigsby Standards as to when a court should go along with that. And in the Ninth Circuit, they've had cases that say, even if the court sets aside the previous summary judgment, we're going to consider whether or not we're going to give it preclusive effect or not. So in this case, Judge Stacy Cornelius certainly did the right thing after nine years of litigation to put an end to this case. It's a non-jury case. If you were to reverse it on any basis, it would go back to her for considerations in trial. She's already reviewed all the evidence there's going to be. In this case, a number of important witnesses have died or become incompetent. So the evidence is what it's going to be. And BB&T was certainly due to get a summary judgment. We have pointed out that in addition to first on the Sheriff's Trust, I'm sorry, on the 1989 Trust, excuse me, there is absolutely nothing to consider in terms of appeal. There was one claim left in the case having to do with the failure to audit. The 1989 Trust says the auditor is to be chosen by the beneficiary, that's Joey Adams, and she never chose an auditor. So there's just absolutely nothing to consider there. On the Sheriff's Trust, it's more complicated because you've got the various collateral estoppel factors. And I would suggest that certainly an easier way to have gotten there would have been for the judge to have just said on the facts there are no genuine issues of material fact. The claims are clearly barred. There's no question that the statute of limitations of two years begins to run when the fiduciary relationship is severed. Whether you want to argue about whether the termination was valid or not, the fiduciary relationship was severed. The statute began to run. There is no evidence. When was the fiduciary relationship severed? I'm sorry? When was the fiduciary relationship severed? The fiduciary relationship was severed on April the 30th, 2011, when Mrs. Adams' Arlington Trust and BB&T entered into a termination agreement. And BB&T performed no further services after that date. There's no dispute in the record. There's no evidence in the record about that. And as far as tolling, Alabama takes a pretty strong stand about tolling. The fiduciary relationship severed at the termination of the trust, 4-30-2011. Yes, ma'am. When was the lawsuit? They filed the lawsuit September the 29th, 2013. They actually discovered facts in early 2012 because they filed a lawsuit in state court against Joy Adams and Arlington Trust with reference to these trusts. They amended their complaint in September of – I'm talking too fast, Joy. I'm sorry. They amended – They didn't know the trust was terminated. What do you say about that? Right. Well, they certainly knew it by March of 2012 when they filed a suit against Arlington and their mother. And they amended the complaint in September of 2012 to assert essentially the claims they put in their complaint here against BB&T. Did BB&T have a fiduciary responsibility to alert the plaintiffs that the trust had been terminated? No, I'm glad you asked that because the law is absolutely clear. Under the Alabama Uniform Trust Code, there is a duty to provide notice to qualified beneficiaries and there's no real legitimate argument here. For the Shares Trust, the qualified beneficiaries of the first share were the grandchildren's trust. And for the second share, there was a general power of attorney, which means that Joy Adams could, in her will, leave the remainder to anyone she wanted to. So the Alabama Trust Code is very clear. And in the official comment, it says, due to the difficulty of identifying beneficiaries whose interests are remote and contingent and because such beneficiaries are not likely to have much interest in the day-to-day affairs of the trust, the Uniform Trust Code uses the concept of qualified beneficiaries to limit the class of beneficiaries to whom certain notices must be given or consents received. So there's no legitimate dispute that the two individuals were not qualified beneficiaries, so they were not entitled to any notice. But the grandchildren's trust would have been a qualified beneficiary. That's right. And the grandchildren's trust was notified. The trustees of that trust were Arlington Trust and Joy Adams. So that trust, indisputably, was notified and the two trustees signed the termination agreement in other capacities, obviously. This case is ready to die, Your Honor. We would encourage you to affirm the judgment of the district court. Thank you very much. This is kind of a strange way to sign a case. Mr. Morrow, were your clients qualified beneficiaries? Your Honor, I'd like to answer that two ways. One, I believe they were qualified beneficiaries under the statute because with respect to the shares trust, the grandchildren's trust was a remainder beneficiary, but the statute regarding the definition of qualified beneficiary talks about who becomes the recipient of the income and principle of the trust. And so with respect to the Share One Trust, the grandchildren's trust is a qualified beneficiary, but the plaintiffs were the beneficiaries of the income and principle of that trust. So the money would flow directly to them. Who was, under the statute, notice was required to be given to the grandchildren's trust and notice, we've just heard, was given to the grandchildren's trust? It was given to the grandchildren's trust. Notice should have also been given to the plaintiffs by virtue of annual audits. The shares trust specifically provided that annual audits need to be provided to all beneficiaries over the age of 18. That certainly included both of the plaintiffs. They were over the age of 18. So notice should have been given to them as well. But there's case law that says that where there's a parent's subtrust, you look to who receives the money. So in this case, if Joy was no longer a qualified beneficiary, it then went to the grandchildren's trust, but you look to who the recipient of the grandchildren's trust was, which was our plaintiffs as the income and remainder beneficiaries. We're not really talking about the grandfather's trust in this law. I'm sorry. The shares trust in the 1989 trust. That's right. And is it true that Joy, there was a power of attorney to change the remainder in this trust? With respect to the Share Two Trust, there was, but for qualified. I don't have these trusts. I haven't looked at them. I assume there was pretty powerful encroachment, just like a model trust. Joy had some encroachment powers. We could argue about it, whether she abused them. She had a right to HEN support, health, education, maintenance and support. She also had encroachment powers. And that was incumbent upon the trustee, the corporate trustee to use its discretion and consider. I understand how that works, but she had broad encroachment powers. Along with her co-trustee. She had a right to invade the trust principle based upon the discretion of the trustee, but under the trust, they were supposed to consider her other income and assets. And she had already received about $3 million from her parents outside the trust. She had borrowed about $6 million from a family limited partnership. And let me speak to that, Your Honors. The settlement with Joy largely was a division of the family limited partnership assets, of which my clients collectively held 25%. So about $3 million of the $4 million was just simply a division of assets outside of a trust to which they were already entitled. Okay, deal with the fact that at the time B&T got involved, you've got the $200, you've got the other $89, the trust that's got a couple hundred dollars, and you made the point, oh, there was this note, the loan and so forth. He responded that, well, the Ash Timber Company was out of business and that didn't really have any value. So that loan receipt, by that time, was not anything and had been part of the other settlement with Joy. What happened in the other settlement with Joy about that loan receipt? There was just a quick claim deed, Your Honor. That's it. But they didn't relinquish. Your clients knew about, when they settled with Joy, knew about that loan receipt. That's what I'm trying to find out. I don't believe they knew at that time about that outstanding loan. They may have, but I'm not positive. They were learning things through the course of litigation. They settled with Joy. They learned a lot and then they sued Joy, right? They sued Joy because they learned a little bit. There were multiple family trusts involved. It wasn't at the time. But did they ultimately, in that lawsuit before it settled, learned about that loan receipt? I don't know that they learned about that loan receipt before the time of the settlement. I don't know. I don't know one way or the other, Your Honor. But at that time, what BB&T did do, though, was they terminated the Shares I and II Trust without notice to our clients and then they've now claimed successfully in front of the District Court that the two-year time limitation has expired. So they've not only mishandled the trust by terminating it when it had assets of almost $1.5 million, but then they got to argue that the statute of limitations bars the plaintiff's claims. We believe that's improper. I'd also like to go to, briefly, what I believe that the third basis of the District Court's error was with respect to the scope of the plaintiff's remaining claims with respect to the 1989 trust. Judge Ott's 2016 order said that the plaintiffs have viable claims remaining based upon the failure of all trustees of the Shares in 1989 Trust to conduct annual audits and provide them to the plaintiffs as beneficiaries. Judge Cornelius interpreted that to mean simply the failure of BB&T to do annual audits, not all the other trustees. And Judge Ott's prior order, the analysis in that 2016 order, simply said that BB&T may be held liable for the breaches by Wells Fargo and Joy as predecessor trustees, and in that order he denied their motion to dismiss for their failure to address breaches of trust occurring prior to 2009, which was when they took service of the Shares in 1989 Trust. I would also like to say knowledge. BB&T's argument, BB&T, I'm sorry. I'm past the time. Thank you.